439 So.2d 1230 (1983)
STATE of Louisiana
v.
Jimmy SPRINKLE.
No. 83-KA-354.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1983.
William C. Credo, III, Asst. Dist. Atty., Gretna, for plaintiff/appellee.
Joseph L. Montgomery, Gretna, for defendant/appellant.
Before CHEHARDY, BOWES and CURRAULT, JJ.
BOWES, Judge.
Jimmy Sprinkle was charged by Bill of Information filed June 11, 1982 with a violation of La.R.S. 14:62.2 (simple burglary of an inhabited dwelling). A plea of "not guilty" was entered on July 1, 1982. Following multiple motion hearings, trial before a twelve person jury was commenced on November 30, 1982. On December 1, 1982, the jury returned a verdict of "guilty of simple burglary of an inhabited dwelling." *1231 A Motion for a New Trial was heard on December 14, 1982, and denied by the trial court. On that same date, the defendant was sentenced to twelve (12) years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.
We affirm the conviction, but vacate the sentence and remand to the trial court for resentencing.
On February 1, 1982, Susan Tebeleff arrived home from work about 4:20 p.m. She went to the mailbox area of the apartment complex where she met her neighbor, Paul Hebert, Jr. Together they started up the stairs to their respective apartments. About the time they reached the first landing, Hebert looked up and saw a man and woman carrying a mirror down from the third floor. The two put down the mirror and continued on down the stairs to the first floor, passing Paul and Susan on the stairs. As Susan reached the mirror, she recognized it as her own and shouted to the couple who were now getting into a blue Cadillac. The man looked up and then got into the car and drove away. Tebeleff and Hebert viewed the license number and wrote it down. Both saw large objects in the back seat of the car, but the objects were not recognizable as they were covered.
The police were called and when they arrived it was verified that Susan Tebeleff's apartment had been burglarized. Missing was her T.V. set, her stereo system, candlesticks, clothing, linens, pillows, jewelry and a camera.
The police ran the license number and found that the owner of the vehicle viewed leaving the scene was Clarence Angar. Information received from Mr. Angar placed Jimmy Sprinkle in possession of the automobile at the time of the burglary. Paul Hebert identified Jimmy Sprinkle from a photo-lineup as the man seen carrying the mirror down the stairway. An arrest warrant was obtained and on or about May 27, 1982, Sprinkle was arrested for the instant offense.
The defendant assigns the following as errors in the trial of his case:
1. The trial judge committed reversible error when he failed to grant defense motions for mistrial, based upon improper remarks made by the prosecutor during closing argument.
2. The trial judge committed reversible error when he denied the defense's motion for a new trial, based upon incorrect evidentiary rulings which were prejudicial to the defendant during the course of the trial.
Assignments of Error Numbers 1 and 2
In both assigned errors, counsel for appellant contends that in his closing argument to the jury the prosecuting attorney "intended to refer to the defendant's failure to take the stand" and, consequently, that the trial judge erred in both refusing to grant the defense's motion for a mistrial, as well as defendant's motion for a new trial.
Louisiana Code of Criminal Procedure Article 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .
(3) The failure of the defendant to testify in his own defense; ... [and]
Louisiana Code of Criminal Procedure Article 851 provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . . . .
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error; ...
The following are the statements made by the prosecutor.
"... as to why he burglarized the place, who knows? You've got the state's evidence. *1232 It's unassailed. Who knows why he burglarized it? ....'
Transcript December 1, 1982, pp. 14 & 15.
"... nice rhetoric. It doesn't assail the evidence. Remember I told you earlier? You heard the evidence. Have you heard anything to the contrary? Anything to assail it? No...."
Transcript December 1, 1982, pg. 40.
"... now, you heard the state's evidence. It's sitting there, and again, unassailed with nothing to the contrary...."
In State v. Fullilove, 389 So.2d 1282, 1284 (La.1980), the Court noted:
The purpose behind the rule embodied in article 770(3) is to prevent attention from being drawn to the fact that the defendant has not testified in his own behalf. When the remark directly points out that the defendant has not testified, it is irrelevant whether the prosecutor intended the jury to draw unfavorable inferences from the defendant's silence. [citation omitted]
Historically, remarks characterizing the state's case as unrebutted have been deemed to be within the permissible scope of argument set forth by C.Cr.P. art. 774, which provides in part, "[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." See State v. Sims, 346 So.2d 664 (La.1977), and State v. Reed, 284 So.2d 574 (La.1973). [emphasis ours]
However, the Louisiana Supreme Court in State v. Perkins, 374 So.2d 1234, 1237 (La.1979) modified its previous rulings, holding:
When the defendant is the only person who can dispute the testimony, a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify, see United States v. Buege, 578 F.2d 187 (7th Cir. 1978). For these reasons it is clear that prosecution violated the prohibition embodied in Article 770 and that the trial judge's refusal to grant a mistrial was therefore erroneous.
Further, the Supreme Court in State v. Harvill, 403 So.2d 706 (La.1981), noted by footnote:
An older line of cases, originating with State v. Howard, 262 La. 270, 263 So.2d 32 (La.1972) and State v. Reed, 284 So.2d 574 (La.1973) [both cited as authority in the state brief] suggested that only direct references to the accused's failure to take the stand constituted grounds for reversal on appeal. However, these holdings were clearly contrary to the express language of LSA-C.Cr.P. art. 770 and are no longer followed. See State v. Fullilove, 389 So.2d 1282 (La.1980) and State v. Perkins, 374 So.2d 1234 (La.1979). (emphasis added).
And more recently in State v. Latin, 412 So.2d 1357 (La.1982), the court stated:
References made in closing argument that the State's case stands uncontroverted have been frequently upheld by this Court. See State v. Sims, 346 So.2d 664 (La.1977); State v. Reed, 284 So.2d 574 (La.1973). A statement that the State's theory of the case remains unassailed encompasses the entire case presented by the defense and does not focus on the defendant's failure to take the stand. However, when the defendant is the only person who can dispute the testimony, a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify. See State v. Perkins, 374 So.2d 1234, 1237 (La.1979).
Considering the foregoing caselaw, the remarks of the prosecutor could be said to come perilously close to prohibited comments if the defendant was the only person who could refute the State's evidence. But this is not the case here. The woman who was with Sprinkle at the time of the offense was an uncharged participant and a perfectly valid witness for the defense. Since she was not billed as a co-defendant, nor otherwise charged, she could have been called to testify by Sprinkle to refute the State's case, and since the defendant made no showing that the woman was unavailable to the defense as a witness, or refused *1233 to testify, we must assume that she was simply not called or attempted to be called by the defense.
We next look to the intent of the prosecutor in making his comments. We do not find that the prosecutor's remarks were intended to bring to the jury's attention the fact that the defendant failed to testify; rather we find that the remarks were merely a comment on the lack of evidence presented by the defense. It should be noted that after the State had put on its witnesses and rested, the defense also rested without putting on a single witness or introducing evidence of any kind.
For the reasons set out above, we find that the defendant's assignments of error lack merit.
Error Patent
A review of the record for errors patent revealed the following:
Illegal Sentence
The penalty provision of R.S. 14:62.2 states, "[w]hoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years."
The commitment order of the defendant (R. p. 68) and the minute entry concerning the sentence (R. p. 12) reflect that the trial court sentenced the defendant to imprisonment at hard labor for a term of twelve years without the benefit of parole, probation, or suspension of sentence.
In State v. Boowell, 406 So.2d 213 (La. 1981), the court noted that the sentencing provision of La.R.S. 14:62.2 was "ambiguous" and, after observing "that it is a fundamental principle of statutory construction that penal provisions are strictly construed in favor of the defendant, who must be afforded the benefit of genuine ambiguity [citations omitted]," declared the defendant's sentence of three years at hard labor without benefit of parole, probation or suspension of sentence, to be illegal.
The issue was clarified in State v. Conley, 411 So.2d 448, 449 (La.1982) when the court held specifically "that the ineligibility provision should attach only to the statute's minimum one year term."
Since the record reveals that the defendant had multiple previous felony convictions, we do not find a term of 12 years to be an excessive sentence by any reasoning. However, in accordance with the above jurisprudence, which we are bound to follow, we hold that the portion of the sentence providing that the entire 12 year term shall be served without the eligibility for parole, probation or suspension, is illegal and remand the case for resentencing.
AFFIRMED IN PART, REMANDED FOR RESENTENCING.